Affirmed.

**Application of TONE et al.**
**Patent Appeal No. 5120.**

Court of Customs and Patent Appeals.
March 6, 1946.

George E. Stebbins, of Pittsburgh, Pa., and Donald A. Gardiner, of Washington, D. C., for appellants.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

Appellants have appealed from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting claims 13 to 21 inclusive of an application for a patent for "Manufacture of Granular Coated Products" as unpatentable over the prior art. The examiner rejected all of the claims, 10 to 21 inclusive, as unpatentable in view of the prior art, and additionally claims 13, 14 and 18 as indefinite. Upon appeal the board reversed the latter rejec-

tion, but otherwise affirmed the decision of the examiner. On rehearing the board held claims 10 to 12, inclusive, allowable.

Appellants have withdrawn the appeal here with respect to claims 13 and 17, and therefore the appeal as to those claims will be dismissed.

Claims 14, 16 and 18 are illustrative of the subject matter and read as follows:

"14. A coated abrasive article of the nature of sandpaper comprising a backing having a layer of grit bonded thereto by a tough, brittle, substantially inflexible bond consisting essentially of a heat-hardened substantially unplasticized phenol-aldehyde condensation product resin, the backing being substantially unpenetrated by and unmodified by the bond and the bond having the tensile strength, water-resistance and hardness characteristic of such resins when cured for a number of hours at a temperature of at least 250° F."

"16. In the method of making a coated abrasive article comprising a supporting backing and an abrasive surface of grits adherently united to a side thereof by a heat-hardened bond, the steps which comprise applying a coating of liquid phenolic condensation product resin to a backing, applying a coating of abrasive grains to the resin coated backing, drying the liquid resin by heating at temperatures not substantially in excess of 130° F, and thereafter baking the article for at least six hours at temperatures of at least 250° F. to heat-harden the bond."

"18. An abrasive disc having a central arbor hole for mounting and comprising a somewhat flexible backing having sufficient rigidity and strength for mounting by means of the arbor hole and having a substantially single layer of abrasive grain applied to the backing, and a grain-bonding coat on the backing of an unplasticized heat-hardened phenol-aldehyde resin having the strength and hardness characteristic of such resins when heat-treated for six hours at 300° F., whereby the grain is rendered very resistant to removal by the grinding stresses encountered in service."

The prior art cited is:

Hannan, 915,430, March 16, 1909;

Graft, 1,217,593, February 27, 1917;

Martin, 1,626,246, April 26, 1927;

Carlton, 1,775,631, September 16, 1930.

The application, Serial No. 354,596, filed July 15, 1940, is a continuation of a former application, Serial No. 79,549, filed May 13, 1936, upon which patent No. 2,252,587 was granted August 12, 1941. The claims of the patent relate to pretreatment of abrasive grains as applied to the backing of an abrasive article, while those of the present application relate to the resin bond character of the backing of an abrasive article and to the method of applying and curing the bond.

The invention concerns a process wherein synthetic resin such as phenol-aldehydes are used in manufacturing sandpaper and the like and abrasive disks, in which the adhesive is rigid and of great strength. The resin as applied and cured in the process grips the abrading material so rigidly and tenaciously that the grains are not bent backwardly when the abrading article operates under pressure against the workpiece, and the binder as applied and cured does not penetrate the paper or fiber backing of the abrading article. The object of appellants is to produce an abrading article the backing of which will not crack even though the abrading face is hard and brittle. Abrasive articles made in accordance with their process are claimed to have a much longer working life than those of the prior art, wherein glue is said to be used in binding abrasive material to the backing.

Unplasticized phenol-aldehyde resin, commonly known as "Bakelite," is the material used as the binder. That substance when first formed is thin and liquid, and upon the application of heat becomes more viscous. By continuing the heat the binder becomes a solid, fusible, and soluble in such solvents as alcohol and acetone. Further heating converts it to a stage where it may be softened by heating but is infusible. The infusible resin is then heated at a temperature not less that 250° F. for several hours, when it becomes "infusible, insoluble, hard, tough, inflexible and of great tensile strength." Appellants' process necessitates the gradual drying of the liquid resin as first applied, with the layer of abrasive therein, at a temperature of about 130° F. and subsequently the complete curing at a temperature of not less than 250° F. Pulverized flint may be added to the resin in liquid form to increase viscosity.

It will not be necessary to deal with the article and method claims separately. Claims 14, 15 and 16 relate to an abrasive article in sheet form and to a method of manufacturing the same. The rest of the claims define abrasive disks and a method for making them.

The Carlton patent relates to forms of abrasive such as sandpaper. It discloses synthetic resins, particularly phenol-aldehyde condensation products, as a binder for maintaining abrasive grains to a limp backing. After the mixture of abrasive and resin in liquid form is applied to a backing the article is cured by heating at a temperature of about 140° F. to 180° F. "for a period of time, the duration of which depends on the degree of heat employed and the end point desired." The patent is directed particularly to the production of a flexible waterproof abrasive paper. The backing of the article is made waterproof by reason of being penetrated by the binder "to a point which approximates the opposite surface of the sheet, but preferably falls short of actual exudation of such vehicle and of resin particles to any excessive extent on such opposite surface." The patentee stresses the flexibility of his product, and particularly its waterproof character, as evidenced by his statement that his binder may be applied as an auxiliary waterproofing coating to the surface of his article opposite the grit-carrying portion. The process provides for a single curing of the article at a temperature from about 140° F. to 180° F.

The Martin patent (the patentee thereof being one of the appellants here) relates to articles of bonded granular material and a process for the manufacture thereof. The article is described as particularly referring to abrasive disks designed for grinding flat surfaces on metals and other materials. The process of the patent comprises the mixing of abrasive grains with synthetic resin such as phenol resin, called in the patent by the trade name "redmanol." The mix is then placed in a mold under a pressure of approximately 900 pounds to the square inch. When molded it is baked in an oven for 15 hours at a temperature of 350° F. A cloth backing is then stuck on one face of the plate-like disk by oxychlorine cement, which sets without heat, and serves as a surface to be fastened by means of glue to the face plate upon which the disk is rotated in service.

The Hannan and Graft references were cited only to show that an abrasive article in the form of a disk with a central arbor hole was not new.

Claims 14, 15 and 16 were rejected as defining nothing over the patent to Carlton in view of the patent to Martin, it being held that there was no invention in finally curing the Carlton product "in the manner disclosed by Martin in regard to time and temperature of cure."

Claims 18 to 21, inclusive, were rejected as unpatentable over the Carlton patent in view of the Martin patent, the Graft and the Hannan patents. It was held there was no invention in changing the sheet of the Carlton patent to disk form as disclosed by Graft or Hannan, and in curing the bond of Carlton's product at the temperature disclosed in the Martin patent.

Appellants do not claim to be the first to employ phenol-aldehyde resins as a binder for abrasive articles in any form. Their contention is that the rejected claims are patentable over the combination of the Carlton and Martin patents.

In our opinion claim 14 is distinguished from the Carlton reference in that the limitation in the claim providing for "the backing being substantially unpenetrated by and unmodified by the bond" finds no disclosure in the patent. If the bond defined in claim 14 penetrated the backing of the sandpaper, the entire product would be brittle and would necessarily crack when flexed. Carlton sought to keep his product flexible as well as waterproof, and for that reason cured at a temperature of about 140° F. to 180° F. Therefore the resin of the patent is not the "inflexible bond consisting essentially of a heat-hardened substantially unplasticized phenol-aldehyde condensation product," cured for a number of hours at 250° F. In our opinion claim 14 is not met by the disclosure of the Carlton patent in view of the Martin patent. If the Carlton article were cured at Martin's temperature of 350° F. for 15 hours, the resin would reach the hard, inflexible state, thus rendering the resin-impregnated backing of Carlton brittle and useless. This would defeat the object of the Carlton patent. It is stated in the Martin patent that the temperature employed would destroy disk backings. Therefore the cloth backing is not applied until his molded mass has been cured and then cooled.

Claims 15 and 16 are both method claims, and clearly distinguish from the curing cycle disclosed in the Carlton and the Martin patents. The patent to Carlton discloses no preliminary heating or drying, but does disclose a process in which the binder penetrates the backing. It does not disclose a final heating at the temperature defined in those claims of 250° F., which is necessary to transform the resin into a tough, hard,

182

inflexible state. This cannot be accomplished by lower temperatures. The Martin patent does not disclose the curing cycle of claims 15 and 16. In the process of that patent, the abrasive mix is molded and afterward baked for 15 hours at a temperature of about 350° F. We cannot see how a combination of those patents would parallel the process defined in those claims.

Claims 18, 19, 20 and 21 were likewise rejected on the patent to Carlton in view of the patent to Martin. Those claims define abrasive disks and methods of manufacturing them. As heretofore indicated, the patent to Carlton is concerned with flexible waterproof sandpaper. This surely could not be used as an abrasive disk. The Martin patent does not disclose the "single layer of abrasive grain applied to the backing" defined in those claims, but is rather more of a rigid multi-layered molded abrasive, fastened by means of glue to the face plate of a grinding machine, and is therefore of an entirely different character from the disk defined by appellants.

In our opinion claim 18 is distinguishable from the combination of those patents, for the further reason that the heat treatment is described in the claim as at a temperature of 300° F. for six hours, which is higher than the temperature disclosed by Carlton, and lower than that of Martin. In our opinion this is critical.

Claims 19 and 20 are directed to a method of making abrasive disks and call for the use of either a heat-hardenable synthetic resinous material or a phenol-aldehyde resin. This is common to all the method claims which define a curing cycle of preliminary drying at a temperature of at least 250° F., and therefore in our opinion those claims are patentable over the references for the same reasons as claims 15 and 16.

Claim 21 contains a limitation, "the cellulosic backing having a substantial portion of its thickness unpenetrated by and unmodified by said resinous bond." We have heretofore pointed out that in the Carlton patent the backing is impregnated with resinous material in order to make his product waterproof, which differs radically from the recited limitation. Furthermore, the sandpaper of Carlton must have a flexible resinous bond, while the bond of the claim must be hard and brittle.

We are unable to see how the multi-layered molded disk of Martin could possibly be combined with the Carlton product to result in anything comparable to the product of appellants.

It was stated by the board that in the process of the Carlton patent the use of the binder is not limited to cases where the backing is "fully penetrated and saturated." The only backing materials shown in the Carlton patent are paper or cloth, both of which are penetrable, and if the patentee had in mind any non-penetrable backing he did not disclose it. Furthermore, unless the backing material of the Carlton device is penetrable he would defeat the very purpose of his process and product, in that the resin binder used by him is in liquid form, its heating is stopped before the resin becomes brittle, and his invention is directed to the production of a flexible, waterproof sandpaper.

The appeal as to claims 13 and 17 is dismissed, and the decision of the Board of Appeals as to claims 14 to 16, inclusive, and 18 to 21, inclusive, is reversed.

Reversed.